Yes, sir. Thank you. Ready? Yes, sir. You may begin. May it please the Court. I am Ian Feinberg, Counsel for Plaintiffs and Appellant, Media Rights Technologies, Inc. I would like to reserve three minutes for rebuttal. That's fine.  on the ground that MRT is precluded from ever bringing a copyright claim, or apparently any other claim, against Microsoft for products it accused of patent infringement in 2013. And even for products it did not accuse in 2013, because the record demonstrates that the 2017 case accuses products not accused in 2013. One of the ironies here is that under federal circuit law, MRT would be free to pursue other patent claims against Microsoft. This case should reverse the district court for two reasons. First, MRT's 2017 claims that accrued after the filing of the 2013 patent infringement action cannot be precluded after this Court's September 25, 2017 decision in Howard v. Coos Bay. Yeah. Howard does seem to say that definitively. But it does strike me that the situation they were assuming was pretty different in the sense that there, there were the infringement activity involved a different set of facts that arose during the penancy of the earlier case. And here, I mean, what's claimed to have happened is a copying at some one time or at an earlier time. And I understand that the distribution and publication are separate copyright wrongs, but the core of the case is really not replicating, is this exact same. And it either is or isn't precluded, it seems to me. Your Honor, if Howard v. Coos Bay is correct, then it does not matter if the claims are the same claims, because Howard v. Coos Bay says that the. I know what it said. I just told you what it said. But I'm just pointing out that it was dealing with a different sort of a situation in terms of the different accrual. Here, the different accrual is kind of technical. It has nothing to do with the underlying facts at all. Well, so we have three decisions, I think, that control Howard v. Coos Bay itself. The Supreme Court's Petrella v. MGM case, which says specifically in a copyright context, and I'm quoting now, when a defendant has engaged or is alleged to have engaged in a series of discrete under 507B. We understand that, too. Why don't you go to the other issue? So you want me to skip it? I mean, because we either do or don't think Howard applies directly to this. Go ahead. Okay. So I'm going to assume that Howard v. Coos Bay is a side, but I want to read to you or at least list to you the facts here, because I think they're important. There are only five facts. On April 25, 2013, MRT sued Microsoft for patent infringement. On April 12, 2014, it alleges it discovered these facts, right? Microsoft says, well, all these acts had already occurred before MRT filed the 2013 patent infringement case, but MRT didn't know about them. MRT alleged that it did not discover the copyright claims, which are wildly different than patent claims. Discovering somebody has copied your code is wholly different from discovering that they may have infringed your patents. So MRT alleges that it didn't discover the code copying until April 12, 2014. Was the motion for summary judgment, did it include a limitations period question as well? I'm unclear. Did the motion for summary judgment include a limitations period question as well, or was it only on preclusion? Your Honor, this is only one. It's not summary judgment. It's dismissal. Was it only so it was only on preclusion grounds? Well, there were other grounds raised, but only preclusion was decided. Right. Was the limitations period issue raised? Not really. We raised it, Your Honor. We raised the issue of claims that accrued after the 2013 patent infringement case was dismissed, because that was the law before Howard v. Coots Bay. But it wasn't decided. So the next fact is that MRT dismisses the 2000 patent infringement case. And interestingly, that case had been stayed from January 3, 2014, until March 16, 2016, because there was another case brought by MRT against Capital One in the eastern Virginia, the eastern district of Virginia, where the same validity issues were raised. That case came off stay only a month before the parties voluntarily dismissed the 2013 patent infringement case. It wasn't a lot of time to add newly discovered copyright claims. On April 6, 2017, MRT sued Microsoft for copyright infringement, and we know that on July 20, the district court dismissed it. Is there any doubt that you could have added the copyright claims in, either had you known about them earlier or in 2016? Well, if we'd known about them earlier, there's no question, because Federal Rule of Civil Procedure, Rule 18, says you can add any claim you've got. So you could have added copyright claims, breach of contract, stolen cars, anything you had. But we didn't know about them. And given the short time period between when the 2013 patent infringement case came unstayed and a month later when it was dismissed, the whole process was how to get that case voluntarily dismissed. So I'd like to go now to what you asked me to address, which is what happens if Howard v. Coos Bay doesn't control. No court — Well, that's not really what I meant, but go ahead. I just want to know. Let's leave aside the post-filing period. And what about the earlier period? Okay. So no court in this or any other circuit, and I've checked as recently as Friday, no court in this or any other circuit has ever held that a patent case can preclude a copyright case. This is because, as recently as 2016, the Supreme Court held in Women's Health that claims cannot be precluded unless they are the very same claims. Copyright claims arising under Title 17 and patent claims arising under Title 35 cannot be the very same claim. They don't even go to the same court of appeal. There's a four — in our view, the court should never have reached the four-part test, that it is — that's a test to see if the claims are the same, but here they are clearly not the same claims. Patent claims, copyright claims are not the same claims. But when you get to the four-part test, the first is the impairment of rights test, and Microsoft basically says, well, the right it received was an order, a judicial order. By the way, this is a dismissal with prejudice without findings, but a judicial order, and I'm quoting them, absolving it from paying damages for any of its sales of the PMP software from 2005 onward, free of any injunction or ongoing damage payments to MRT. That is a shocking statement, Your Honor. What Microsoft contends is a dismissal of four patents gave it a perpetual, worldwide, non-exclusive license under all of media rights technologies, not just patents, not just copyrights, but everything. That's simply wrong. Well, everything. I mean, I think that what — that the reason these cases, this case arises is because of the peculiarity that the source code is covered by copyright. Ordinarily, in most instances, the copyright claim and a patent claim, you know, would be even more distinct because the copyright claim would have to do with the functionality of the — of the program or the product. And it's because we're recognizing a copyright right in the source code that we're getting this overlap. And the question is — so it's an interesting and unusual case. The question is, what do we do with it? You're absolutely correct, Your Honor. And, in fact, whether software should be protected by copyright or some unique protection was hotly debated in Congress and really not finally settled until the CONTU report in 1980. But Microsoft's arguments can't be squared with the Supreme Court's Lawler decision. They argue, well, they're free of an injunction. But the Supreme Court said the fact that you seek an injunction in two or more cases doesn't bear on claim preclusion. Substantially the same evidence test is interesting, Your Honor, because they point to evidence that they claim is substantially similar. That's just not true. In a patent infringement case, the only — and a copyright case — the only evidence that might be in common is how many units were sold. But even those are different because not everything that infringes — Absolutely not. But the claim is that the contributory and inducement claims maybe do. They do not. That is not what Microsoft is saying because that would be simply wrong. Microsoft is pointing to cases — there are cases that say that evidence of copying can go to willfulness. It's not necessary, but it can go to willfulness. But copying isn't required for either inducement or contributory infringement because inducement simply means you induce somebody else to infringe the patent, and contributory infringement means you contribute to someone else infringing the patent. What's different about induced patent infringement and contributory patent infringement from direct patent infringement is that the defendant has to know about the patent. Right? You have to know that you're inducing infringement. You have to know you're contributing to patent infringement. But you could have created it completely independently. Oh, absolutely. In fact, a lot of the turmoil over patents is because the defendants claim they didn't even know about the patent, which often they didn't, but are nonetheless infringing. I see that my time — Let me ask you a brief question. Assuming that the copyright claims are different claims from the patent claim, but that a part of the copyright claims could have been brought when the patent suit was brought, what's the res judicata result? The res judicata result, Your Honor, is there isn't any. In fact, this whole area stems from mischief created, in my view, by the restatement second of judgments. And even that, at the very end of Section 24, says joinder of multiple claims is permissive, not mandatory. Because of Rule 18, you can bring any claim you have, Your Honor. Here's where the mischief comes. At the very end of Part H, the reporter says, this still leaves the possibility that a plaintiff, actually having a single claim, but mistakenly believing that he has a number of them, may commence a limited lawsuit and then run afoul of the rule against splitting. Here, no intellectual property litigator, except possibly the one representing Microsoft for these purposes, would think these are the same claims. Let me ask you this question. Maybe you can explain to me what you believe the effect was of the 2016 dismissal with prejudice. Absolutely. See whether you can crystallize that for me. It obviously accomplished something. Yes. It obviously precluded certain claims from going forward. What is your position? The law is crystal clear under both Ninth Circuit and Federal Circuit. They can never again be sued for acts of infringement that occurred after the dismissal of that case, actually after Howard v. Cuspe, maybe after the filing of the case, by the patents accused in that case of — for infringement of the patents asserted in that case. You're saying it had no impact whatsoever on the copyright claims? None. It doesn't even have impact on future patent claims. If there had been a decision on the merits, you'd have issue preclusion, but there's no issue preclusion off a stipulated dismissal with prejudice. It doesn't have any impact on copyright patents. What do you mean it doesn't have impact on future patents? You mean a different patent? Different patents, or according to Federal Circuit law, you could assert the same Okay. I'd like to retain some time. All right. Thank you. I'll give you a minute, plus your 17 seconds. Good morning, Your Honors. May it please the Court, Jonathan Lamberson for Microsoft. This Court has frequently said that the — whether the two suits arise from the same transactional nucleus of facts is by far the most important factor to consider in this analysis. Well, I looked at the first complaint. It's fairly bare bones. It does — it doesn't depend in any way on copying. Is that right?  Why? Well, when we look at, for example, paragraph 11, the theory MRT chose to pursue in that case was a copying theory, was a theory that they had given Microsoft access to their software as well as other documentation. But it's in no way — I mean, it's sort of peripheral. I mean, the patent claim can be entirely made out with — without regard to copying, right? A patent claim could. Their patent claim was not. The way they chose to plead it was not. But so — but also, and this seems — this is not really discussed in the briefs very much, and there must be a reason, but I don't know what it is. The main thing about a patent claim is there has to be a valid patent, right? Yes. To make a patent claim, you would need a valid patent. That's right. Right. And it appears that what actually happened here was that one of the patents was declared invalid, and that's why the case went away. It has nothing to do with the copyright case. Certainly. That's right. Well, I should back up. MRT chose to dismiss this complaint with prejudice. I understand that, but it is completely essential to the claim that they brought, that there be a valid patent. And it is completely irrelevant to the later claim whether there was a valid patent. Well, recall, though, only one of the four patents was invalidated. I understand that. But critical to us with regard to every one of the patents is that there were valid patents. Certainly. Certainly, they decided they had no chance of prevailing in the patent case. They agreed to dismiss it. They agreed to dismiss it with prejudice. That's all undisputed. The question is, could they have brought a copyright claim in that case? Is that the question? It is. Why is that the question? That's the critical question, because — It can't be that any claim they could have brought is a — If it arises from the same transactional nucleus of facts, yes. But the most important fact in a patent case is whether you have a valid patent. That's what is litigated up the kazoo. We don't do patent cases, thank goodness, but my understanding is that that's the core of the patent case. Your Honor, first of all, I wouldn't say there is one core of a patent case. But copying surely isn't one of them. Copying is critical to a patent case. In fact, copying is the most persuasive patent case you could possibly have. If you first don't show that there's a valid patent. We look at the Global Tech decision, for example, from the Supreme Court. That was a decision about induced infringement, where the Supreme Court said we had somebody who said they buried their head in the sand. They didn't know about the patent, they said. But they took somebody's product, they shipped it overseas, and they copied it lock, stock and barrel. And the Supreme Court said that is an act of induced infringement. It doesn't matter whether you knew about the patent or not. You took somebody's product, you copied it, and you should have known that when somebody has a product, it could be covered by patents. And that is an act of induced infringement. And when we look at MRT's complaint, they were on four squares with that Global Tech. When we look at what they pled, MRT didn't plead this was an accident. Microsoft accidentally stepped onto our land. They didn't say that in 2013. What they said in paragraph 11 at ER 188, MRT made its technology available to Microsoft. On information and belief, Microsoft used the information it learned from MRT, including information relating to controlled data pathway technology. That is — It didn't say that it copied the source code. When I say somebody — well, so their allegation here is not actually that they copied the source code in the current complaint. The allegation is they took the software, they reverse engineered the software, and they used that to copy or derive the protected media path. And when in 2011, they said we gave Microsoft our technology, our CDP technology, and they used that to make their PDP. That is either a copy or it could be a derivation, certainly. But the allegation is they took what they learned from us and they used it to build their solution. Not only that, they did it according to MRT. They say Microsoft couldn't develop this itself. It was unable to do so. It was failing in the marketplace. There was a market demand. We were the first ones to solve it. This is what they pled. They were the only ones. So they go to Microsoft and Microsoft takes it. That is the alleged bad act, the alleged copying. All occurred in this 2005 timeframe. So that is what caused MRT to have this belief that they pled in 2011 on information and belief. Microsoft used what it learned from us to make their solution. And yes. Kagan. Ginsburg. Can I ask a question, a different question? Yes, Your Honor. As was pointed out before, the copyright and patent cases are litigated differently. Certainly. So how does that work for preclusion purposes? I mean, if they were brought together, one of them would have gone to this Court  and presumably they could have come to conflicting conclusions of some kind, or at least not necessarily the compatible conclusions. And the fact that they go to separate courts certainly suggests that Congress doesn't think they're all that related. How would that work? Have you ever seen a case do that, split up like that? So it wouldn't work that way, Your Honor. Copyright and patent claims are often brought together. We cited many examples of it. And when they are appealed, they go to the Federal Circuit, because there are patent issues. So the Federal Circuit has passed on copyright issues. In fact, we cited a few. And with some sort of pending jurisdiction. Well, yes. As long as there is a patent issue involved in the appeal, the Federal Circuit can hear it. So they frequently ruled on copyright issues. And we cited a few cases in the briefing where they did so. And in fact, I don't think there's ever been a dispute that patent and copyright cases can be brought together. And really, the dispute, and it was raised here again today, there's this sweeping claim that somehow because each act of copyright gets its own statute of limitations, that therefore claim preclusion simply doesn't apply to copyright. That is the logical conclusion of the argument. Kagan. No, that wasn't my understanding. My understanding is that it doesn't apply going forward. And, you know, and I understand there's a — Howard does seem to say that flat out. It doesn't seem all that sensible applied to the situation if you actually thought there was a preclusion. Well, what — the argument as I understand it is that each act of copying, each distribution of the copyrighted work they cite to the Petrella case is a new cause of action under their analysis. And so imagine a simple case where you had somebody who sued for copyright and lost. As I understand their argument, it would be that, well, the next day they sell a new copy, that's a new act of — But there would be issue preclusion. I mean, that's why this case is an auditing. I mean — But not if it wasn't litigated. What if we had somebody — Right, but ordinarily, or in many instances, there would simply be issue preclusion, and you wouldn't be able to do it again going forward because the facts would be the same underlying facts. But there's a reason both claim preclusion and issue preclusion exist. And it's for situations like this where somebody decides their case is simply not sustainable. Maybe it's because of a decision from another court. Maybe it's because of an adverse ruling in this particular court. They lose on summary judgment or some other issue. Maybe, maybe they, you know, just decide they don't have a Rule 11 basis. But the problem with your going-forward issue is that Howard says we're going to create a hard-and-fast rule just to get this over with, essentially. And the question is, why doesn't that hard-and-fast rule apply here? It doesn't apply here because in Howard, the hard — to be clear, the hard-and-fast rule in Howard involved a situation where you had a new and separate event. The first case was about retaliation in the job. That may be the sensible rule, but it's not the rule that was articulated. But, again, when Howard talks about a new cause of action, we have to remember it in the context of the four-factor test. We're not talking about new cause of action as in anything somebody could put in a complaint. When this Court talks about cause of action in the claim preclusion context, it is looking, is this something that arose from the same facts? Does it involve the same evidence? Does it have the same rights? And so on. So when Howard says we're talking about, you know, a new cause of action, it is talking about that four-factor test and talking about is there some new fact. And in Howard there was, in fact. There was a retaliation for the lawsuit, which was separate and occurred later in time than the retaliation on the job. So those are two separate events, distinct, separate in time. I think one was 2008. One was 2011. That is worlds apart from what we have here, where we have a single bad act before both suits. We have a first bite at the apple on patent, loses or decides not to pursue. And then we have an attempt at a second bite at the apple based on that same transactional set of facts. So when we go back to our four-factor test, the facts and evidence here, it is not simply the copying aspect of it that would have overlapped. We also would have had evidence of the source code, for example. The source code would have been critical in both cases, and it would have been the same source code. The evidence of Microsoft's independent development, its early design documents. I thought that the source code, I mean, I'm a technological novice or worse than that, but the patent, I mean, I looked at the patents as they were articulated. They didn't seem exactly to be patenting. They are not patenting the source code. They are patenting some functionality, as I understand it, that arose from the source code, but they are not patenting the source code. Is that right? Well, patent, the patents recited both systems and methods, and the functionality that they were claiming was embodied in the code. And so the way in a patent case like this, you would try to see are the claim limitations in the code. For example, there was something called a controlled media pathway in the patents, and it had to divert data from one place to another place. The way you look and see if an accused product like Microsoft Windows is doing that diversion from one place to another is in the code. In fact, that's the only place. Is it correct that there are two kinds of code? There's source code and there's something else called operational code or something like that? Object code. Object code, all right. Yes, and they are completely different, and that distinction is critical here. Right. Source code is secret. That is the, you know, under the hood, the code, what the engineers write. It then gets translated by a computer program called a compiler into object code that the computer runs. And what MRT has alleged here is that they put their watermark, if you will, in the object code, not — it's in the source code, but they say they can also find it in the object code. And so it's — this is not a case like some of the cases cited where you have some hidden fact. The watermark was there for anybody to see, according to MRT and as they've plotted. And that's the critical distinction here. But it — What about the limitations issue? Is it in the case at this point? It wasn't squarely raised below, Your Honor. We had asked for, in addition to the dismissal on claim preclusion, we had asked for a more definite statement on certain issues that would have also helped us decide on the claim preclusion issue. Certainly, I think for — we felt at the time the contract and DMCA claims almost certainly would have been barred here by claim preclusion. Copyright, obviously, there is this ongoing doctrine that would have come into play, but certainly would have cut off some period. But we aren't — that's not — was not addressed by the district court and is not at issue here. So we talked about facts, the copying, the evidence, evidence of sales. The rights impaired or destroyed is interesting because recall that in the 2013 case, MRT sought forward-looking remedies. And so this is not — we're not saying, as MRT characterizes it, that we're free from all time for all claims they could bring. But what we did gain from the dismissal with prejudice was a finding that we were not enjoined that — that from this act of allegedly taking their technology, that we were not going to have to stop selling it. And it is this — But what if they'd come up with another patent? And that's another issue I did want to address. The Federal Circuit has applied claim preclusion even — even as — as between — with different claims, for example, or with different products. So this idea that the Federal Circuit — The next day they said — they now filed a claim that you infringed patent ABC. Right. Not — not one of the four that was in the other case. What the Federal Circuit has said there is that you have to look at two things. Is there an overlap between the claims in terms of the scope? And is there an overlap in the products in terms of what they're accusing? That is their test for patent cases. It is not this bright line, no preclusion in patents. That — that is not how I read the Federal Circuit's test. It's not how they read their own test. And, in fact, both sides, I think there were two Federal Circuit cases cited where they did apply preclusion. One — one, there was actually — so in one of the cases, there was actually a difference between the products. But they said the difference was not material enough, and they applied preclusion. So it is — it is a — You're talking about the products. I'm talking about the patents. And the same for the patents. that we cited a case, I believe it was the — let's see — the Senju Pharmaceutical case. The claims there — actually, there was a reexamination that changed the claims. So the claims were different, but they still applied preclusion. I see that my time has expired. Thank you. Thank you. A minute and 17 seconds for you. Well, actually, I'm — I'm fairly shocked by what I just heard. This is a partner at one of the most — the preeminent patent litigation firm in the U.S. telling you that copying is central to patent infringement. That's nonsense. No, he didn't say that. He said that as you pleaded, it was. But we — Does that matter? It doesn't matter. And, in fact, this is what it actually — there's — the word copying isn't in the 2013 patent infringement case at all. It doesn't appear there. This is what he's referring to at ER 188, paragraph 11 of the 2013 patent case. On information and belief, Microsoft used the information it learned from MRT. Used information, not copied source code. Used information it learned from MRT, including information relating to the controlled data pathway technology, to build what Microsoft refers to as the protected media path technology and architecture. Copying wasn't — goes to, perhaps, willful infringement, gets you more money, but is not in any world central to patent infringement. He's — counsel's correct. There are times when you can actually be precluded from bringing an unasserted patent, but that's because the second patent is patentably indistinct from the first. Well, when you dismiss a claim with prejudice, I — is everything in the complaint now in the judgment, or what exactly? I mean, you did allege willful infringement, for example. We did. Is that part of the — the judgment with prejudice? That there isn't — that there wasn't willful infringement? Well, it — That you lost on willful infringement? Well, it doesn't matter, Your Honor, because we can't sue them for infringement for those products and those patents, whether it's willful or not. So it's — I understand that, but I'm still asking the question. So I think the answer is no, because that's an issue. Willfulness is an issue. There were no findings of fact, no conclusions of law. This case was dismissed. So it's the judgment that you lost on something, but we don't know what it is? No, we know exactly what it is, especially after Howard v. Cuspe. We know exactly what that judgment is. If we go back and try to sue Microsoft for infringement of patents where the act occurred before the 2013 patent infringement case was filed, or pre-Cuspe, before it was dismissed, we're barred. We can't bring it. It's precluded. It's gone. That's what happens when you dismiss with prejudice. Those claims for acts that occurred before the dismissal and after Cuspe, before the filing of the first case, are gone forever. That's what they got. Okay. Thank you very much. Thanks, both of you, for a useful argument in a difficult case. Media Rights Technologies v. Microsoft Corp. is submitted, and we'll go to the last case of the day, Pilgrim v. Berryhill. Thank you, Your Honor.
judges: Gould, Berzon, Block